UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-11937

MANOUCHEKA CHARLESSAINT

v.

PERSION ACCEPTANCE CORPORATION

MEMORANDUM AND ORDER ON
CROSS MOTIONS FOR SUMMARY JUDGMENT

June 23, 2015

STEARNS, D.J.

Plaintiff Manoucheka Charlessaint brings this lawsuit individually and on behalf of all others similarly situated against Persian Acceptance Corporation (PAC) for alleged violations of the federal Electronic Funds Transfer Act (EFTC), 15 U.S.C. §§ 1692 et seq., and the Massachusetts Electronic Funds Transfer Act (MEFCT), Mass. Gen. Laws ch. 167B. Both the EFTC and the MEFCT bar the conditioning of a consumer credit loan on a preauthorized electronic fund transfer. 15 U.S.C. § 1693k(1); Mass. Gen. Laws ch. 167B, §7(1).

PAC is an automotive finance company. At all relevant times, PAC had a Dealer Agreement with Malden Auto Brokers (MAB), a car dealership. Pursuant to the Agreement, PAC undertook to finance auto loans by

purchasing qualified Retail Installment Sales Agreements from MAB.   In April of 2013, Charlessaint sought to purchase a used car from MAB and applied for a loan with PAC through MAB.  Wellington Duarte, the owner of MAB, assisted Charlessaint with her loan application.   Duarte had been trained by PAC in the use of its online portal, which provided the loan application documents.  These included a Document Checklist for Funding, a Customer Checklist, a Retail Installment Sale Agreement, and an A.C.H. (Automated Clearing House, a national electronic funds transfer system) Electronic Debit Authorization form.  Duarte informed Charlessaint that she was required to open a bank account and agree to have weekly car payments electronically debited before PAC would approve her loan.   Charlessaint followed Duarte's banking directions, completed the loan application (including the A.C.H. authorization form), and was given a loan.   PAC automatically deducted the weekly loan payments from Charlessaint's bank account.   Some months later, Charlessaint requested that PAC change the debits to a monthly payment cycle because the weekly withdrawals occasionally resulted in an overdraft of her account.  PAC refused.

Charlessaint commenced this suit in April of 2014.   In February of 2015, PAC made an Offer of Judgment to Charlessaint on her individual

claims pursuant to Fed. R. Civ. P. 68.[1]  PAC offered to submit to judgment on the EFTA and MEFTA claims in the amount of one thousand and one dollars each (the maximum statutory damages for each statute is one thousand dollars), "together with the Plaintiff's actual damages (to the extent such actual damages exist) . . . in an amount to be determined by the Court."  Def.'s

---

[1] Rules 68 governs the effects of offers of judgment in a civil suit:

**(a) Making an Offer; Judgment on an Accepted Offer.**  At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued.  If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service.  The clerk must then enter judgment.

**(b) Unaccepted Offer.**  An unaccepted offer is considered withdrawn, but it does not preclude a later offer.  Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

**(c) Offer After Liability is Determined.**  When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment.  It must be served within a reasonable time – but at least 14 days – before the date set for a hearing to determine the extent of liability.

**(d) Paying Costs After an Unaccepted Offer.**  If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Ex. 14.[2]   Charlessaint rejected the offer.   After the completion of fact discovery, the parties filed the present cross motions for summary judgment.

In support of its motion for judgment of no liability, PAC advances two arguments.   First, PAC contends that Charlessaint's rejection of its Rule 68 Offer of Judgment mooted her claims.   The gist of the argument is that because PAC had offered Charlessaint all the relief that she could possibly have obtained on her individual claims, there is no remaining claim or controversy to sustain this court's exercise of subject matter jurisdiction. PAC further contends that without a personal stake in the claims, Charlessaint cannot act as a representative of the purported class.

The effect of an unaccepted Rule 68 offer of complete relief is at the moment an unsettled question of law.   The majority of the Circuits – including the Third, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits, hold that as a rule such an offer forecloses a plaintiff from continuing the litigation.[3]   *See, e.g., Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)

---

[2] The Offer also included costs and reasonable attorneys' fees, also to be determined by the court.

[3] Although the First Circuit held that the claims of a plaintiff who has *actually* obtained the relief sought are moot, *see Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001), it has not addressed the effect of an unaccepted Rule 68 offer.   An appeal that presents this question is currently pending before the Court.   *See Bais Yaakov of Spring Valley v. ACT, Inc.*, No. 14-1789 (1st Cir. 2014).

("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." (internal citation omitted)); *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012), *as amended* (Feb. 1, 2012) ("When a Rule 68 offer unequivocally offers a plaintiff all of the relief she sought to obtain, the offer renders the plaintiff's action moot." (internal quotation marks and citation omitted)); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 574 (6th Cir. 2009) ("We agree with the Seventh Circuit's view that an offer of judgment that satisfies a plaintiff's entire demand moots the case and reject the plaintiffs' contention that the offer of judgment could not be considered."); *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004), *as amended* (Oct. 22, 2004) ("An offer of complete relief will generally moot the plaintiff's claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation."); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 502 (5th Cir. 2005) ("[A] full settlement offer, even if refused, would dispose of Beebe's individual claims."); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1243 (10th Cir. 2011) ("As Rule 68 operates, if an offer is made for a plaintiff's maximum recovery, his action may be rendered moot.").

The Circuits differ, however, on the effects of such an offer on a class action suit, such as in this case, when the offer was made prior to a motion for class certification.[4]   The Third and Fifth Circuits permit the nominee plaintiff to continue her pursuit of certification even though her personal claims may be deemed moot.   *See Weiss*, 385 F.3d at 347-348 ("The mootness exception recognizes that, in certain circumstances, to give effect to the purposes of Rule 23, it is necessary to conceive of the named plaintiff as a part of an indivisible class and not merely a single adverse party even before the class certification question has been decided.   By relating class certification back to the filing of a class complaint, the class representative would retain standing to litigate class certification though his individual claim is moot."); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-921 (5th Cir. 2008) (applying the same rationale to a collective action case).   In so holding, these Circuits expressed a shared concern that without such an exception, defendants could "pick off" class representatives by making early

---

[4] The Circuits also differ on whether the proper outcome is the dismissal of plaintiff's claims, or the entry of judgment for the plaintiff according to the terms of the offer.   *Compare Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) ("[The attorney] lost his claim to attorney's fees by turning down the defendant's offer to pay them, and [plaintiff] lost [his damages].") *with O'Brien*, 575 F.3d at 575 ("[W]e believe the better approach is to enter judgment in favor of the plaintiffs in accordance with the defendants' Rule 68 offer of judgment.").

offers of judgment to the named plaintiffs.  *Weiss*, 385 F.3d at 343-344 ("As in [*Deposit Guar. Nat'l Bank, Jackson, Miss. v.*] *Roper* [445 U.S. 326, 339 (1980)], allowing the defendants here to 'pick off' a representative plaintiff with an offer of judgment less than two months after the complaint is filed may undercut the viability of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims."); *Sandoz*, 553 F.3d at 920 ("By tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action, the defendants can in each successive case moot the named plaintiffs' claims before a decision on certification is reached.  A series of individual suits, each brought by a new named plaintiff, could individually be 'picked off' before class certification . . . .  The fact remains that in those cases in which it is financially feasible to pay off successive named plaintiffs, the defendants would have the option to preclude a viable class action from ever reaching the certification stage." (citation omitted)).  The Tenth Circuit has gone further, holding that "a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III."  *Lucero*, 639 F.3d at 1249.

The Supreme Court, for its singular part, rejected the theory of continuing justiciability in the context of a Federal Labor Standards Act (FLSA) collective action where the plaintiff's individual claims were mooted by an unaccepted Rule 68 offer. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The majority opinion, by acknowledging that "Rule 23 actions are fundamentally different from collective actions under the FLSA," *id.* at 1529, leaves open the question of remnant standing in a class action context. Justice Kagan, in a dissent joined by three other justices, criticized the premise that an unaccepted Rule 68 offer had the effect of mooting a plaintiff's individual claims.

> "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." [*Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)] (internal quotation marks omitted). By those measures, an unaccepted offer of judgment cannot moot a case. When a plaintiff rejects such an offer – however good the terms – her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer – like any unaccepted contract offer – is a legal nullity, with no operative effect. As every first-year law student learns, the recipient's rejection of an offer "leaves the matter as if no offer had ever been made." *Minneapolis & St. Louis R. Co. v. Columbus Rolling Mill,* 119 U.S. 149, 151 [] (1886). Nothing in Rule 68 alters that basic principle; to the contrary, that rule specifies that "[a]n unaccepted offer is considered withdrawn." Fed. Rule Civ. Proc. 68(b). So assuming the case was live before – because the plaintiff had a stake and the court could grant relief – the litigation carries on, unmooted.

*Genesis Healthcare*, 133 S. Ct. at 1533-1534 (Kagan, J., dissenting).

8

Adopting the rationale of Justice Kagan's dissent, the Ninth and Eleventh Circuits have held that "an unaccepted Rule 68 offer that would have fully satisfied a plaintiff's claim does not render that claim moot." *Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 954-955 (9th Cir. 2013); *see also Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 703 (11th Cir. 2014) ("We agree with the *Symczyk* dissent.").[5]  Recognizing the divergence in the Circuits, in *Campbell-Ewald Co. v. Gomez*, 2015 WL 241891 (U.S. Jan. 16, 2015), the Supreme Court granted *certiorari* on the following questions:

> 1. Whether a case becomes moot, and thus beyond the judicial power of Article III, when the plaintiff receives an offer of complete relief on his claim.
>
> 2. Whether the answer to the first question is any different when the plaintiff has asserted a class claim under Federal Rule of Civil Procedure 23, but receives an offer of complete relief before any class is certified.

*Id.*, at *1.

---

[5] The Second Circuit appears to maintain an intermediate approach. Although it has "reiterate[d] that it remains the established law of this Circuit that a 'rejected settlement offer [under Rule 68], by itself, [cannot render] moot[ ] [a] case'", *Tanasi v. New Alliance Bank*, 2015 WL 2251472, at *4 (2d Cir. May 14, 2015), *as amended* (May 21, 2015) (alterations in *Tanasi*), *citing McCauley v. Trans Union, L.L.C.*, 402 F.3d 340, 342 (2d Cir. 2005), it has concluded that entry of default judgment in favor of the plaintiff in the offered amount is the "better solution." *McCauley*, 402 F.3d at 342.

As Charlessaint properly notes, it is unnecessary for this court to weigh in on the unresolved mootness debate to decide this case.  Mootness is only a potential outcome when the Rule 68 offer is one for complete and unconditional relief.

> To effectuate the purposes of Rule 68, an offer of judgment "must specify a definite sum or other relief for which judgment may be entered and must be unconditional." *Simmons* [*v. United Mortg. & Loan Inv., LLC,*] 634 F.3d [754,] 764 [(4th Cir. 2011)] (citing 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3002, p. 92 (2d ed.1997)). "[T]he plaintiff must know unequivocally what is being offered in order to be responsible for refusing such offer." *Id.*

*Warren*, 676 F.3d at 370-371.  In *Warren*, the plaintiff refused an offer of judgment on a Fair Debt Collection Practices Act claim which included, *inter alia*, an offer of the maximum statutory damages plus one dollar, as well as "[a]ctual damages in the amount of $250, or an amount determined by the Court upon Plaintiff's submission of affidavits or other evidence of actual damage." *Id.* at 369.  The Fourth Circuit found that the offer did not moot plaintiff's claim because it did not provide complete and unconditional relief with respect to her actual damages claim.  "[A]t this stage of the proceedings, before any evidentiary hearing or judicial fact finding in the district court, we simply cannot hold that Warren could not possibly recover more than $250 if her case proceeded to a jury trial." *Id.* at 372.  Likewise, the stipulation that the court would determine actual damages at a later date "also failed to

10

moot Warren's action" because it was "predicated on what the district court as fact finder might or might not do." *Id.* at 372.   "[T]his option provided Warren no guarantee that the defendants would not offer their own submissions as to damages or challenge the veracity of hers." *Id.* at 373.

PAC's offer to Charlessaint suffers from identical imperfections.  The offer conditions Charlessaint's claim for actual damages on the court's future findings.  It also leaves open the possibility that PAC might contest any offer of proof on actual damages, thus prolonging the litigation contrary to Rule 68's purpose of achieving finality as well as drawing into question PAC's assertion that no element of claim or controversy remains.  Because PAC's tender does not completely and unconditionally offer relief to Charlessaint, her claims are not moot.

PAC's second argument is that Charlessaint has no competent evidence supporting her EFTA and MEFTA claims.  PAC maintains that Duarte's statements are inadmissible hearsay and that the documentary evidence does not conclusively demonstrate the A.C.H. authorization was a PAC lending requirement.   Neither contention bears up under summary judgment. *See Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir. 1994) (at summary judgment, "the evidence must at all times be viewed in the light most favorable to the nonmovant, and all doubts

and reasonable inferences must be resolved in the nonmovant's favor."). Duarte had, at the time Charlessaint applied for the loan, accumulated some fifteen months of experience and training in steering customers to PAC loans, arguably sufficient to meet the personal knowledge requirement of Fed. R. Evid. 602 with regard to PAC's lending practices and policies. *See* Dealership Agreement (executed in October of 2011), Def.'s Ex. 3. Moreover, Duarte's role as a loan originator for PAC raises the question of whether Duarte was acting as PAC's agent, or had been given the apparent authority to bind PAC. *See* PAC Loan Status, Pl.'s Ex. 8 (preapproving Charlessaint's loan). Finally, the Document Checklist for Funding distributed by PAC references the "ACH ELECTRONIC DEBIT AUTHORIZATION" on its list of 19 items.[6] Compl. - Ex. A. The Customer Checklist provided to Charlessaint required that she provide "a voided check or copy of a bank statement," together with her bank account and routing numbers. Compl. - Ex. B. The documents, taken together with Duarte's testimony, is more than sufficient

---

[6] PAC contends that this list was not intended for customers (although PAC does not explain why Charlessaint was given a copy), but for dealers, and that not all listed documents were required for each and every transaction. However, in considering this document on summary judgment, the court may draw the inference in Charlessaint's favor that the A.C.H. authorization was integral to the approval of all PAC loans.

to raise a genuine dispute of whether PAC conditioned Charlessaint's loan on preauthorized electronic fund transfers.

For her part, Charlessaint moves for partial summary judgment on the merits of her individual claims. As Charlessaint holds herself out as the representative of a class of similarly situated individuals, she has pushed the cart in front of the horse. The court will defer its decision on the merits of the underlying claims until after (and if) a plaintiff class is certified. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (noting that "[t]he potential for so-called 'one-way intervention' [] aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one.").

ORDER

For the foregoing reasons, defendant PAC's motion for summary judgment is <u>DENIED</u>.  Plaintiff Charlessaint's motion for partial summary judgment is <u>DENIED</u> without prejudice.  Charlessaint will have thirty (30) days (until July 23, 2015) to submit a motion for class certification, or to inform the court that she intends to proceed on her individual claims only.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE